IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DEE ANN H.,

                    Plaintiff,                                  **8:20CV333**

          vs.

                                                        **MEMORANDUM AND ORDER**
ANDREW   SAUL,   Commissioner   of   Social
Security;

                    Defendant.

          Plaintiff claims in this Social Security appeal that the Commissioner's decision to deny her

benefits under the Social Security Act is contrary to law and not supported by substantial evidence.

Having considered all arguments and materials presented, and for the reasons explained below, the

Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

          On May 22, 2018, Plaintiff filed an application for disability insurance benefits alleging a

disability onset date of January 23, 2018.  (TR. 13.)  Plaintiff's application was denied initially

and on reconsideration.  (TR. 13.) Plaintiff thereafter filed a request for an administrative hearing.

(TR. 114.)  An administrative hearing was held before an administrative law judge ("ALJ") on

September 13, 2019.  (TR. 29.)

          On October 22, 2019, the ALJ issued an unfavorable decision finding Plaintiff was not

disabled under the Social Security Act.  (TR. 10-23.)  In the decision, the ALJ evaluated Plaintiff's

claim by following the five-step sequential analysis prescribed by the Social Security Regulations.[1]

--------

          [1] The Social Security Administration uses a five-step process to determine whether a
claimant is disabled.

          At the first step, the claimant must establish that he has not engaged in substantial
          gainful activity.  The second step requires that the claimant prove he has a severe
          impairment that significantly limits his physical or mental ability to perform basic
          work activities.  If, at the third step, the claimant shows that his impairment meets

The ALJ found Plaintiff had the severe impairment of Parkinson's disease. (TR. 15.) The ALJ also determined Plaintiff has the non-severe impairments of anxiety and insomnia. (TR. 15.) The ALJ formulated Plaintiff's residual functional capacity ("RFC")[2] as follows:

> [Plaintiff] has the residual functional capacity to perform light work . . . with the following limitations: she has no ability to climb ladders, ropes, or scaffolds. She has occasional ability to climb ramps and stairs, crawl, and balance. She has frequent ability to stool, kneel, and crouch. She should have no concentrated exposure to vibration or hazards such as unprotected heights. She needs two 15-minute breaks each 8-hour workday in addition to standard meal break.

(TR. 17-18.) Based on this RFC, the ALJ found Plaintiff could perform her past relevant work as an account manager and accounting coordinator. Plaintiff's request for benefits was denied. (TR. 22-23.)

Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on July 7, 2020. (TR. 1-5.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *See Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* at 960-61. Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001). The Court must "defer

---

or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (citations omitted).

[2] "RFC" is what a claimant "is able to do despite limitations caused by all of the claimant's impairments." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citation omitted).

heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

On appeal, Plaintiff argues that the ALJ erred by (1) failing to acknowledge or analyze three medical opinions from Plaintiff's treating specialist and (2) not accounting for the total limiting effects of Plaintiff's impairments. (Filing No. 17.) For the reasons explained below, the Court finds Plaintiff's arguments unpersuasive.

### 1.      Medical Evidence

Pursuant to the regulations governing the evaluation of medical opinions for claims filed after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the medical opinions using these five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c). Of these factors, supportability and consistency are the most important. 20 C.F.R. § 404.1520c.

In considering the medical evidence, the ALJ articulates how persuasive he or she finds the medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b). However, if one medical source issues more than one opinion or administrative finding, the ALJ need only articulate how he or she considered the source as a whole. 20 C.F.R. § 404.1520c(b)(1). Because supportability and consistency are the most important factors, those must be discussed by the ALJ, but other factors may or may not be discussed. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff argues the ALJ did not properly evaluate the medical evidence because he did not acknowledge or analyze the medical opinion of Plaintiff's treating neurologist, Dr. Harris Frankel ("Dr. Frankel"). On May 14, 2018, Dr. Frankel, who has been Plaintiff's neurologist since 2011, completed an attending physician statement opining that Plaintiff has been unable to work since March, 2018. (TR. 369-370.) Under the diagnosis portion of that physician statement, Dr. Frankel

noted Parkinson's disease as Plaintiff's primary diagnosis and insomnia as the secondary diagnosis. (*Id.*) On October 31, 2018, Dr. Frankel completed another physician statement in which he reported that Plaintiff had issues with fatigue and opined that Plaintiff was fully disabled and has been disabled since March 1, 2018. (TR. 366-367.) On July 5, 2019, Dr. Frankel completed an assessment clarifying his October 31, 2018 statement and opining that Plaintiff does not have the functional capacity to perform sedentary activities on a full-time basis. (TR. 284-285.) Plaintiff contends that by improperly evaluating the medical evidence and omitting a discussion of Dr. Frankel's opinion, the ALJ failed to build a logical bridge between the evidence and his findings. Plaintiff maintains this matter must be remanded because the ALJ's explanation of his decision was not done in such a way to allow the Court to trace the path of his reasoning and evaluate the basis on which his decision was made.

The Court disagrees that the ALJ's evaluation of the medical evidence was somehow deficient or that Dr. Frankel's opinions were ignored or disregarded. Throughout his decision, the ALJ cited and discussed Dr. Frankel's treatment records. For example, referencing Dr. Frankel's treatment notes, the ALJ stated that in December, 2017, Plaintiff reported increased fatigue with a fall, but denied other episodes; felt a preponderance of tremor internally, despite it begin controlled externally; and indicated her memory had been okay. (TR. 19.) Again referencing Dr. Frankel's notes, the ALJ stated that in October, 2018, Plaintiff reported her Parkinson's disease had been mostly stable, indicated her mobility had been okay, acknowledged she was forgetful at times, denied significant cognitive impairment, but continued to endorse fatigue with low levels of endurance. (*Id.*) Although the ALJ did not mention Dr. Frankel's conclusion that Plaintiff is disabled, conclusions about a claimant's ability to work are reserved to the Commissioner. *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) (stating that a treating physician's opinion that a claimant is disabled gets no deference because it invades the province of the Commissioner to make the ultimate disability determination).

Plaintiff's assertion that the ALJ did not consider Dr. Frankel's findings regarding Plaintiff's fatigue is also inaccurate. In fact, Dr. Frankel's opinion regarding Plaintiff's fatigue was used to incorporate rest restrictions into Plaintiff's RFC. In his decision, the ALJ stated he found the opinion of state agency medical consultant Alexandra Suslow-Geditz, M.D. persuasive, stating that Dr. Geditz's opinion was consistent with the evidence. (TR. 21.) Dr. Geditz opined

that Plaintiff could complete light work, occasionally climb ramps and stairs and crawl, and frequently balance, stoop, kneel, and crouch. (TR. 69-90.) Dr. Geditz also opined Plaintiff should never climb ladders, ropes, or scaffolds and avoid exposure to vibrations and hazards. (TR. 69-90.) Citing Dr. Frankel's notes, the ALJ stated his RFC was more limiting than Dr. Geditz's opinion in that it added 15-minute breaks and standard meal breaks due to Plaintiff's reports of continued fatigue. (TR. 21.)

Although the ALJ's decision did not mention Dr. Frankel by name, the ALJ clearly considered Dr. Frankel's findings in reaching and explaining his decision. Moreover, the ALJ stated in his decision that he fully considered the medical opinions and prior administrative medical findings, including opinions from Plaintiff's own medical sources. (TR. 21.) Plaintiff has not given the Court any reason to doubt this statement. *See Wilburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010) (presuming an ALJ "properly discharged his official duties and did in fact review" the materials he said he would review). Further, any arguable deficiencies in the ALJ's opinion writing are immaterial so long as the ALJ's decision is supported by substantial evidence on the record as a whole. *See Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011) ("[A]n arguable deficiency in opinion-writing technique does not require [the court] to set aside an administrative finding when that deficiency had no bearing on the outcome") (quotation omitted).

The Court finds the medical evidence, including the opinion of Dr. Frankel, was properly considered, evaluated, and articulated in such a way as to allow meaningful judicial review. Per the new regulations, an ALJ is not required to give special difference to treating physicians' opinions. Rather, medical opinions are evaluated based on the factors set out above, of which supportability and consistency are most critical. Dr. Frankel's treatment records showed Plaintiff suffered from Parkinson's disease, insomnia, and anxiety. Dr. Frankel's medical records reflected that Plaintiff experienced fatigue, problems with endurance, and difficulty sleeping. However, Plaintiff's medical records also contained normal physical and mental examination findings. For example, despite her diagnosis of Parkinson's disease, Plaintiff's records showed she had normal range of motion, proper ambulation with good stride, good strength in her extremities, stable neurological functioning, and no significant cognitive impairment. (TR. 391, 392, 413, 420, 441-42, 446-47, 523-25.)

Further, Plaintiff's treatment records indicated Plaintiff displayed good insight and judgment, proper alertness, and no significant issues with speech, memory, attention, thought processes, or perceptions.  (TR. 404, 459-60, 462, 464-65.)  Plaintiff's medical records showed she reported to her psychologist and psychologist that her sleep had improved and that she informed psychologist, Tessa Holscher, PsyD, that she felt she was making progress towards sleeping better at night.  (TR. 401-02, 404, 459, 461, 465.) She also told Dr. Holscher that shorter naps during the day helped her feel less fatigued.  (TR. 461.) Additionally, Plaintiff told her psychiatrist, Dr. Thomas Magnuson, that she slept fine and kept active during a trip to Washington which helped her.  (TR. 404.)  Plaintiff also reported to internist, Dr. Kara Markin, that she was dozing off less and had more energy and interest after she started taking testosterone pellets.  (TR. 449.) The record, taken as a whole, supports the ALJ's RFC determination and finding of no disability.

## 2.    Subjective Complaints

Plaintiff contends the ALJ erred in his evaluation of her subjective complaints and the total limiting effects of her impairments.  The ALJ determined that Plaintiff's impairments could reasonably be expected to cause Plaintiff's symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consist with the medical evidence and other evidence in the record.  (TR. 18.)  In other words, the ALJ concluded that Plaintiff's condition created some limitations, but not to the extent claimed by Plaintiff.

When evaluating a claimant's subjective complaints, the ALJ considers (1) "the claimant's daily activities;" (2) "the duration, frequency, and intensity of the pain;" (3) "precipitating and aggravating factors;" (4) "dosage, effectiveness, and side effects of medication;" and (5) any "functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *accord* 20 C.F.R. § 404.1529(c) (listing considerations as including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment, other than medication, received for relief of pain or other symptoms; measures used to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms).  The ALJ must also consider the claimant's work history and "[t]he absence of an objective medical basis

which supports the degree of severity of subjective complaints alleged." *Polaski*, 739 F.2d at 1322. Although "an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them," the ALJ may find that these allegations are not credible "if there are inconsistencies in the evidence as a whole." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (internal quotations and citations omitted).

The credibility of a claimant's subjective complaints and other symptoms "is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). *See also Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) ("[W]e will not substitute our opinions for that of the ALJ, who is in a better position to assess a claimant's credibility."). Courts "do not reweigh the evidence presented to the ALJ," and must "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (internal quotation and citation omitted).

Here, the ALJ concluded Plaintiff's allegations of disabling limitations were not fully supported by, or consistent with, the evidence. As described in more detail above, medical treatment records indicated Plaintiff had a normal gait, good strength of her extremities, intact postural reflexes, and normal neurological examinations. Medical examinations showed no significant concerns with speech, memory, attention, though processes, perceptions, or behavior. The medical evidence also demonstrated Plaintiff had reported an improvement in sleep. In assessing Plaintiff's subjective complaints, the ALJ noted the routine and conservative nature of Plaintiff's medical treatment and Plaintiff's positive response to that treatment. The evidence before the ALJ indicated stretching exercises and relaxation techniques improved Plaintiff's symptoms, including her difficulty sleeping. Additionally, Plaintiff's medical records revealed that Plaintiff reported she was dozing off less and had more energy and interest after she started taking testosterone pellets. Plaintiff also acknowledged that her Parkinson's disease medication improved her symptoms. (TR. 56-57.)

In evaluating her Plaintiff's subjective complaints, the ALJ also considered Plaintiff's activities of daily living. The ALJ stated Plaintiff was able to care for her own personal needs, cook, complete household chores, drive, shop, and have lunch with friends. (TR. 21.) The ALJ

pointed to evidence showing Plaintiff was also a board member for a non-profit organization, visited siblings every week or so, assisted with grandchildren, cared for a pet, and attended a sewing class. (TR. 246-47.) Plaintiff indicated she walked two miles multiple times a week and could walk up to five miles. (TR. 240-41.) Plaintiff also reported to healthcare providers that she traveled to Washington, bought a house in Texas, and had taken her grandchildren to a children's museum. (TR. 404, 460-61.) The Court finds the ALJ properly considered and discussed Plaintiff's subjective complaints in making his disability determination.

An ALJ's credibility finding will be upheld so long as it is adequately explained and supported. *Choate v. Barnhart,* 457 F.3d 865, 871 (8th Cir. 2006). The Court finds that, on the evidence presented, the ALJ did not err in his credibility evaluation and assessment of the severity of Plaintiff's subjective complaints and limitations. Therefore, the Commissioner's decision will be affirmed.

## CONCLUSION

For the reasons stated, and after careful consideration of each argument presented in Plaintiff's brief, the Court finds that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for an Order Reversing the Commissioner's Decision is denied. The Motion to Affirm Commissioner's Decision is granted. Judgment will be entered by separate document providing that the decision of the Commissioner is affirmed.

Dated this 12th day of July, 2021.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge